# Exhibit A

Filed **4:54P** m

Cause No. **423-9472**

NOV 02 2023

Sarah Loucks
District Clerk, Bastrop County

| | | |
|---|---|---|
| **Cody Dahl,** | § | IN THE DISTRICT COURT |
| and | § | |
| **Tonya Cole Dahl**, | § | |
| Individually and as Executors/ | § | |
| Administrators of the Estate of | § | |
| **Abigail Opal Dahl**, | § | |
| a deceased minor child, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | BASTROP COUNTY, TEXAS |
| | § | |
| **ALPHABET, INC.,** | § | |
| **DISCORD**, INC., | § | |
| **GOOGLE**, LLC, dba Duo/Meet, | § | |
| Gboard, YouTube, and all subsidiaries, | § | |
| **HOLLA GROUP, Ltd.**, dba **Monkey**, | § | |
| **SNAP, INC.**, dba **SNAPCHAT**, | § | |
| **JOHN & JANE DOES 1-10,** | § | |
| **Corporate COS., 1-10,** | § | |
| | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## **ORIGINAL PETITION**

We, the undersigned plaintiffs **Cody Dahl** and **Tonya Cole Dahl,** individually and as administrators of our deceased daughter **Abigail Opal Dahl's** estate**,** now come before this Court complaining of Defendants **Alphabet, Inc., Discord, Inc., Google, LLC**, the named subsidiaries of **Google**, **Holla Group, Snap, Inc., and John & Jane Does 1-10 or Corporate Cos. 1-10,** and seeking relief as follows:

**1**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

## DISCOVERY CONTROL PLAN: RULE 190.4

1.     We, the Plaintiffs, will conduct discovery in this case under level 3, by a discovery control plan specially tailored to the unique and complex circumstances of this case. We will endeavor to reach an agreed order with the Defendants pursuant to Rule 190.4(a).

## TRIAL-by-JURY

2.     We, the undersigned Plaintiffs Cody Dahl and Tonya Cole Dahl, demand a trial-by-jury of all issues so triable under Article 1, §15, and Article 5, §10, of the Constitution of the State of Texas, as well as the Seventh Amendment to the Constitution of the United States.

## JURISDICTION and VENUE

3.     The District Court has jurisdiction because our demand for damages exceed the jurisdictional floor and minimum of the District Courts in Texas; the District Court also has jurisdiction to render injunctive relief.

4.     Venue is proper in Bastrop County under §15.001 et seq. of the Texas Civil Practice & Remedies Code because (a) **Abigail Opal Dahl** committed the self-injury resulting in her death in Bastrop County, was hospitalized at Seton Hospital in Bastrop County, and (b) the Bastrop County Sheriff's Office investigated her death, (c) many witnesses reside in and Google, Discord, and other Defendants all operate and conduct business in Bastrop County.

**2**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

## BACKGROUND AND SUMMARY

5.    On November 3, 2021, our daughter, **Abigail Opal Dahl,** a beautiful 12-year-old girl, died 16 days before her 13th birthday, at the Dell Children's Medical Center in Austin, Texas, after she hanged herself beside her own tree house at her grandmother's home in Smithville, Texas, on October 18 of that year.  See Exhibits A (Abigail Photo) and B (Bastrop County Sheriff's Report).

6.    We sue here for wrongful death, brought on by social media which breached the protective net we had tried to build around our daughter, in promoting cults of death, disobedience, and generally dysfunctional living.

7.    Our first and primary goal is to sue for damages for **Abigail's** wrongful death and intentional infliction of emotional distress caused by certain **John & Jane Does**, or **Corporate Cos.,** whose identities are unknown to by us, but known to and concealed from us by Defendant Google LLC and the other Defendant Internet Service Providers herein named.

8.    Second, in order to identify the culprits liable for Abigail's death, however, and as a necessary predicate to discovering the true names and identities of our John and Jane Doe Defendants, we file for an injunction ordering Defendants ALPHABET, Inc., DISCORD, Inc., GOOGLE, LLC (including all of YouTube's subsidiaries and associates, HOLLA GROUP, and SNAP, dba SNAPCHAT, to use all available technology to recover and

**3**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

disclose all of Abigail's on-line records, which Google refused to disclose upon our previous request submitted over a year before filing this Petition. See "Google's refusal: **postmortemrequests@google.com**", Exhibit C.

9.     Third, in support and aid of our first two causes of action and requests for relief, we seek a declaratory judgment concerning our rights to file a complaint for bill equitable discovery under the open Courts provision of the Texas Constitution, and fourth, in fact we present this complaint for equitable bill of discovery as our common law and constitutional right.

10.     Fifth and finally, we seek an order of declaratory judgment to extend, modify or reverse the immunity provisions of the Communications Decency Act (CDA), 47 U.S.C. §230(c), as applied and construed by the courts as a violation of our natural and constitutional rights as parents and as administrators/executors of the estate of **Abigail Dahl**.

## Parties: Plaintiffs

11.     I, the undersigned Tonya Cole Dahl, have a Canadian Social Insurance Number (SIN), the last three digits of which are 002.  I also have a Canadian Driver's license, the last three digits of which are 894.  I am married to Cody Dahl and am/was the natural mother and primary caretaker of my late daughter Abigail Opal Dahl.

**4**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

12.   I, the undersigned Cody Dahl, have a Canadian Social Insurance Number (SIN), the last three digits of which are 626.  I also have a Canadian Driver's license, the last three digits of which are 852.

13.   We currently reside in Smithville, Texas, at the home of Tonya's mother, Jean Cole, although we have basically spent our lives traveling back and forth between Canada (most recently in Regina, Saskatchewan) and Texas.  Cody is in the process of establishing permanent USA residency.

14.   Our daughter, **Abigail Opal Dahl,** was born on November 19, 2008, and died on November 3, 2021.  We, the plaintiffs, are her parents and the sole administrators of her estate.  We do not accept or believe that **Abigail** knowingly, understandingly and intentionally took her life, but that she was misled and "seduced" by social media promotion and algorithms which generate profit for the defendants by suggesting, encouraging and inspiring risky and dangerous behavior, self-destruction, and death.

15.   Wherefore and accordingly, we charge wrongful death by "content creators" who were promoted and directed by the Defendants to vulnerable, underage girls like our daughter, maximizing female suicide in 2021.

## Parties: Defendants

16.   **Alphabet, Inc.,** is a Delaware corporation headquartered in Mountain View, California.   **Alphabet, Inc.,** is the parent/umbrella

**5**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

corporation which owns subsidiary corporations, apps and entities named as Defendants here: **Google, LLC, Gmail, YouTube, Gboard,** and the **Google Team** (including "**postmortemrequests@google.com**") the latter two of which (**Gboard** and **the Google Team**) do not appear to have a separate legal identity.

17.     **Alphabet, Inc.,** may be served with citation and process through its registered agent at 251 Little Falls Drive, City of Wilmington, County of New Castle, Delaware 19808.

18.     **Discord, Inc.,** is a software company operates voice, video, and text communication service platforms.     **Discord, Inc.,** is a Delaware Corporation with Registered Address at 444 De Haro Street, Suite 200, San Francisco, California 94107, which may be served with citation and process by and through its Agent CT Corporation System, 330 North Brand Blvd., Suite 700, Glendale, California 91203.

19.     **Google, LLC**, is a subsidiary of **Alphabet, Inc.,** but lists its principal place of business and custodian of records as either: "**Google, LLC**, c/o Custodian of Records, 1600 Amphitheatre Parkway, Mountain View, California 94043, USA," or "**Google, LLC** c/o Custodian of Records, 1001 North Shoreline Boulevard, Mountain View, California 94043." **Google, LLC.,** then designates as its registered agent for service of process,

**6**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

"Corporation Service Company (CSC), 2710 Gateway Oak Drive, Suite 150N, Sacramento, California 95833."

20.   **Holla Group Limited** is the creator of the Monkey App, a "unique roulette style match algorithm and live video communication" which **Abigail Opal Dahl** appears to have used in the months prior to her suicide.

21.   Holla Group is a U.K. Corporation with Company Number 10570278, and its registered office address at "The Forge, Old Park Road, Crewe, Cheshire, England CW1 5UE, United Kingdom of Great Britain and Ireland. Holla has been acquired by Huafang Group of China but appears to maintain its UK identity.

22.   **Snap, Inc.,** is the Santa Monica, California-based owner and developer of **SnapChat**, with headquarters at 3000 31st Street, Loop North, Santa Monica, California 90405.

23.   **Snap, Inc.,** is a Delaware Corporation with registered office for service of process at the Corporation Service Company, 2711 Centerville Road, Suite 400, City of Wilmington, County of New Castle, Delaware 19808.

24.   **YouTube** is a subsidiary of **Alphabet, Inc**., and **Google, LLC,** with its headquarters at 901 Cherry Avenue, in San Bruno, California 94066 USA. The California Secretary of State lists YouTube Entertainment Studios, Inc., at 901 Cherry Avenue, in San Bruno, as an active Delaware Corporation

7

which may be served together with Google at 1505 Corporation, CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833 through employees Becky DeGeorge, Koy Saechao, Lai Saevang, or Nicole Staus.

25.   **John Does** 1-10: **Abigail** followed at least one "gamer boy" "**P"** that we know of, on Nintendo and YouTube.  We believe there were several boys online and perhaps in the real world who convinced Abigail that there was something wrong with her, wrong with her life, and generally engendered cognitive dissonance sufficient either to lead her to commit suicide, or to play high risk "challenge" games which ultimately led to accidental death.

26.   **Jane Does** 1-10:  There were several girls of whom we know whose interactions crossed between the virtual and real world.  A minor named **LAB** was **Abigail**'s best friend.  Her mother blamed us for Abigail's death.  This was a common theme.  Another real-world friend, who led Abigail into the world of **Discord**, was another minor named **JK**, who introduced Abigail to many people we did not know.

27.   **Corporate Cos 1-5:** In addition to the named corporate defendants, we believe that there may be other "on-line content creators" who generate real-world challenges and dares, including experiments with strangulation

**8**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of*
*Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

or "faked" suicide (as an emotionally manipulative game to test parental reaction), which can result in real-world injury and death.

## RULE 47(c) STATEMENT of RELIEF SOUGHT

28.    We move and pray that this Court will allow discovery to proceed and to set and hold a trial-by-jury for the final determination of just damages as compensation for the death of our daughter and the loss, suffering and indignities we have sustained as a result of the culture of perversions promoted on the internet which killed our daughter, destroying her bright future, and ours.

29.    Damages: as required by Rule 47(c) of the Texas Rules of Civil Procedure, however, we aver that we seek monetary relief of not less than $52,000,000.00 (fifty-two million dollars) nor more than $120,000,000.00 (one hundred twenty million dollars) for the injuries we have suffered.

30.    Declaratory Judgment: as further required by Rule 57(d), as noted above, we also seek declaratory judgment concerning the Texas Constitution's Open-Courts provision and the recognition of our right to file a complaint for equitable bill of discovery such as formerly existed and was common in Texas[1].

---

[1]    ...a bill of discovery can be brought against a person or entity unrelated to the primary dispute, but having information needed by a litigant, for the

**9**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

31.   Furthermore, we ask this court to extend, modify, or reverse existing jurisprudence concerning the judicial application and construction of immunity under the Communications Decency Act (CDA), 47 U.S.C. §230(c).

32.   But at the core of our suit against the named ISPs, and any Corporate Cos., whose identities are as yet unknown to us, by our Bill of Discovery we seek a mandatory injunction to search their records and disclose all information available concerning our daughter's contacts and activity, expressive and communicative, on the internet/world wide web.

33.   We, the undersigned Plaintiffs, **Cody Dahl** and **Tonya Cole Dahl**, were and are Abigail's parents.   Over the past two years, we have suffered unspeakable loss and emotional anguish and distress over our daughter's death.   We have blamed ourselves and many of our friends and neighbors have blamed us too.

---

sole purpose of obtaining the names against whom a cause of action is maintainable and contemplated.  The trial court in the exercise of its equity power can order that information produced ....As concerns that defendant from whom the information is sought, the order is not deemed incidental to the contemplated suit but instead is in the nature of a mandatory injunction. ***Pelt v. State Board of Insurance***, 802 S.W.2d 822 at 828 (Tex.App.---Austin 1990).

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of*
*Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

34.    To make us whole is impossible until the second coming of Christ and the resurrection of the dead at the end of time.  But in this world, declaratory judgment, injunctive relief, and damages are what we seek by this lawsuit.

35.    By way of special relief, to the degree that the Defendant ISPs refuse to cooperate, we submit and ask this Court to declare and adjudge that they (all of the non-cooperating defendants) should be deemed accessories, accomplices, and co-conspirators in the abuse, indoctrination, and murder of our daughter.

### **INITIAL DISCLOSURES DUE 30 DAYS AFTER ANSWER**

36.    We give the Defendants notice that Rule 194 of the Texas Rules of Civil Procedure now requires each defendant automatically to serve required initial disclosures on us, as the Plaintiffs, within thirty days of filing  each of their individual answers to this Petition or initial appearances by motion. Rule 194 requires the following information to be provided by initial disclosure without service of any discovery request:

   A. The correct names of the parties to the lawsuit;
   B. The name, address, and telephone number of any potential parties;
   C. The legal theories and, in general, the factual bases of the responding party's claim or defenses (the responding party need not marshal all evidence that may be offered at trial);
   D. The amount and method of calculating economic damages;
   E. The names, addresses, and telephone numbers of persons known to have relevant facts, and a brief statement of each identified person's connection to the case;

**11**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

F. A copy or a description by category and location – of all documents, electronically stored information, and tangible things that the responding party has in its possession, custody, or control, and may use to support its claims or defenses, unless the use would be solely for impeachment;

G. Indemnity and insurance agreements as described in Rule 192.3(f);

H. Any Settlement Agreements as described in Rule 192.3(g);

I. Any and all witness statements as described in Rule 192.3(h);

J. In any suit alleging physical or mental injury and damages from the occurrences (on-line corruption, seduction and death of Abigail Opal Dahl and the aftermath to us her parents of these events or processes), all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical facts in records and bills;

K. In any suit alleging physical or mental injury and damages from the occurrences that are the subject of this case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party; and

L. The name, address, and telephone number of any person or persons, or firm, who may be designated as a Responsible Third Party.

## THE INTERNET CULTURE OF DEATH

37.   A flood of lawsuits and news articles in the United States and Canada show that involvement in the internet/world wide web has caused a nationwide, possibly worldwide, epidemic of mental health problems leading to suicide and self-injury in minor children.

38.   The Defendants are all leaders in the promotion of "experimental" and unregulated content to the children, both adolescents and sub-adolescents.

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

39.    Bullying and harassment, violent and graphic content, unrealistic expectations of growth, health, and sexuality are all frighteningly common on any and all of the Defendants' products and services.

40.    Defendants have all taken steps to minimize the public awareness of the harmful experiences that are widespread in the use of their products, in particular Discord, Google, Monkey, SnapChat, and YouTube, especially for young users.

41.    No effective boundaries are in place despite published "minimum age" guidelines, and our late daughter **Abigail Opal Dahl** was clearly able, at the age of 12, secretly to access vast amounts of material which was harmful to her both physically and mentally, on secretly "stolen" phones with no assistance, encouragement, nor our express or implicit permission.

42.    The internet/world wide web, appears to be the lawless WILD WEST for young users, who experience higher rates of major depressive episodes, anxiety, sleep disturbances, and other mental health concerns[2], all of which

---

[2]    *See, e.g.*, Jonathan Haidt (NYU-Stern) & Jean Twenge (San Diego State U), & Zach Rausch (NYU-Stern) **Social Media and Mental Health: A Collaborative Review** (unpublished manuscript, on file with New York University), *available at* tinyurl.com/SocialMediaMentalHealthReview (last consulted November 2, 2023, 2023); see also Jacqueline Nesi et al., *Handbook of Adolescent Digital Media Use and Mental Health*, Cambridge Univ. Press (2022).

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

**Abigail Opal Dahl** developed in the last six-eight months of her life, although we did not realize it was coming from the internet/web because we THOUGHT we had successfully monitored and limited her access.

43.     Defendants intentionally focus on designing features to increase time spent on their Platforms, so that heavy (teen and younger) consumers of social media have developed worse mental health outcome, including but not limited to poorer sleep patterns (e.g. later sleep and wake times on school days and trouble falling back asleep after nighttime awakening and poorer sleep quality due to excitement/worry/obsession.)[3].

44.     Abigail Opal Dahl exhibited all these patterns in the last six-to-eight months of her life, and we did not understand.

45.     Such sleep interference in turn causes or exacerbates symptoms of depression and anxiety[4].   Lack of sleep also has negative physical effects,

---

[3]     Holly Scott et al., ***Social Media Use and Adolescent Sleep Patterns: Cross-Sectional Findings from the UK Millennium Cohort Study,*** 9 BMJ Open 1 (2019); Garrett Hisler et al., ***Associations Between Screen Time and Short Sleep Duration Among Adolescents Varies by Media Type: Evidence from a Cohort Study***, 66 Sleep Med. 92 (2020).

[4]     Megan A. Moreno & Anna F. Jolliff, ***Depression and Anxiety in the Context of Digital Media***, *in* Handbook of Adolescent Digital Media Use and Mental Health 227 (2022); *see also, e.g.,* Huges Sampasa-Kanyinga et al., ***Use of Social Media is Associated With Short Sleep Duration in a Dose-Response Manner in Students Aged 11 to 20 Years***, 107 Acta Paediatrica 694, 694-700 (2018).

**14**

including interfering with normal physical response to any ordinary stressors.

46.    These physical and mental harms are particularly acute for young users, who have less discipline and self-control, and are thus less able to regulate the time they spend on social media platforms. When companies like the Defendants design platforms to exploit young users' psychological vulnerabilities, the harms are exponentially compounded.

47.    Systems theory classifies this as a positive feedback loop: those who use social media habitually are less able to regulate their behavior; that habitual use, in turn, leads them back to more social-media use; and restarting the cycle, that additional use makes it even harder to regulate the problematic behavior[5].

48.    Heavy use of social media at the boundary between childhood and teen years has severely negative impacts on long and short term life satisfaction and adjustment.

49.    Research indicates that going through puberty, which normally happens at 12-13 precisely **Abigail Opal Dahl's** age, while being a heavy

---

[5]    Maria T. Maza et al., *Association **of Habitual Checking Behaviors on Social Media with Longitudinal Functional Brain Development,*** 177 JAMA Pediatrics 160 (2023).

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

social media user, especially a SECRET and HIDDEN user, much like being a secret alcoholic, exacerbates the problem and interferes with all sensitive social and practical learning at this critical moment in human life[6].

50.    The bottom line is that the Defendants' Social Media in particular are DESIGNED TO BE ADDICTIVE and that young users who often feel an extra need to be connected at night and frequently wake up throughout the night to check their social media notification are much more likely to have clinically relevant symptoms of depression than non-users[7].

51.    We were very protective parents, as Regina van den Eijnden and her colleagues recommend in their above-cited "Longitudinal Study on the Protective Role of Parental Rules".

52.    We actually went to fairly extreme measures to block Abigail's access to the corruption of the web by passwords, supervision, and time-tables.

---

[6]     *See, e.g.*, Amy Orben et al., ***Windows of Developmental Sensitivity to Social Media***, 13 Nature Comm. 1649 (2022).

[7]     Anushree Tandron et al., ***Sleepless Due to Social Media? Investigating Problematic Sleep Due to Social Media and Social Media Sleep Hygiene***, 113 Computers in Human Behavior 106487 (2020). Regina J.J.M. van den Eijnden et al., ***Social Media Use and Adolescents' Sleep: A Longitudinal Study on the Protective Role of Parental Rules Regarding Internet Use Before Sleep***, 18 Intl. J. Envtl. Res. Pub. Health 1346 (2021). Sampasa-Kanyinga et al., *supra* note 18; *see also* Marian Freedman & Michael G. Burke, ***Social Media and Sleep Duration-There Is a Connection!***, 35 Contemp. Pediatrics J. (2018).

**16**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

53.     But the power wielded by the Defendants over the internet use and web behavior of our daughter was greater than the power of our rules; and we submit that their power killed our daughter.

54.     We want to know how and why, and find out exactly what happened.

55.     These are the socially functional purposes of our lawsuit: we want to save other parents' children who are still alive.

56.     Our daughter died in the last quarter of 2021, which was the highest year recorded for teen suicide attempts, ages 12 to 17 years old[8].

57.     The youth mental health crisis fueled by social media platforms, such as those operated by the Defendants which we know our daughter used, has been particularly detrimental for girls and young women.

58.     Suicidal ideation has surged among girls over the past decade ending in 2021. According to the CDC's above cited *Youth Risk Behavior Survey*, in 2011, 19% of high school girls seriously considered attempting suicide. By

---

[8]     ***Youth Risk Behavior Survey, Data Summary & Trends Report***: 2011-2021, at 61, Ctrs. for Disease Control & Prevention (2023), archive.ph/NYuQX.     Gregory Plemmons et al., ***Hospitalization for Suicide Ideation or Attempt: 2008-2015***, 141 Pediatrics 1, 4-5 (2018); see also Brett Burstein et al., ***Suicidal Attempts and Ideation Among Children and Adolescents in US Emergency Departments***, 2007-2015, 173 JAMA Pediatrics 598, 598-600 (2019).   See also, Jean Twenge, ***Increases in Depression, Self-Harm, and Suicide Among U.S. Adolescents after 2012 and Links to Technology Use: Possible Mechanisms***. 2 Psychiatric Research & Clinical Practice 19 (2020).

**17**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

2021, that figure reached 30%, and our beautiful daughter became part of that tragic statistic.

59.    This increase in suicidal ideation among girls has been accompanied by an increase in actual suicide attempts.  In the past decade, there has been a 30% increase in the rate of high school girls who attempted suicide, but our beloved daughter never made it to high school.

60.    Increased rates of suicidal ideation and attempts have led to an overall higher rate of completed suicides among young girls.

61.    Further, the lockdowns resulting from the COVID-19 pandemic plainly exacerbated excessive social media use.  The increase in consumption of digital and social media by young users during this time is linked to an increase in "ill-being" and media addiction[9]; the harmful link is social media.

62.    We allege that, jointly and severally, all the Defendants' design choices and practices take advantage of and contribute to young users' susceptibility to addiction.  We charge that the Defendants exploit the psychological vulnerabilities of young children, "'Tween" and Teen users through the false promise that meaningful social connection lies in the next story, image, or

---

[9]    Laura Marciano et al., ***Digital Media Use and Adolescents' Mental Health During the Covid-19 Pandemic: A Systematic Reive and Meta-Analysis,*** 9 Front Pub. Health 783868 (2021).

**18**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

video and that ignoring that next piece of social content and context could lead to social isolation.

63.   "'Tween" and Teen users, (our daughter was obviously a "'Tween") become victims when they have to cope with emotional issues like "not having enough 'friends'" or "having friends who aren't really their friends" or "creating a perfect image", "not being honest about feelings," "wanting to hurt of kill themselves, or feeling down, sad, alone, lonely, and just "not good enough."

64.   We know our daughter's internet interactions and web use caused her adverse mental consequences, caused her anxiety, and ultimately created a cognitive dissonance between her family life and "the life of the world" to which Abigail Opal Dahl, suffering from disturbed sleep, unable to reconcile our family values with the values of the world, either gave up trying or decided to experiment with strangulation, perhaps hoping to survive or just to shock and horrify us, as we know this is promoted on many game platforms on **YouTube**, **Discord**, and **SnapChat** in particular.

65.   We did not know enough, in November 2021, effectively to demand an investigation.  The Bastrop County Sheriff's office (see Exhibit B), was of no help whatsoever.

**19**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

66.    But we now know that in other jurisdictions, at least one coroner has expressly found that a young girl has "died from an act of self-harm whilst suffering from depression and the negative effects of on-line content," that she had not sought out, but that certain of the Defendants' algorithms has pushed on her.

67.    We allege that the Defendants named here knowingly operate in such a way using algorithms to result, in some circumstances, of binge periods of images, video-clips, and text some of which were selected and provided without expressly requesting them.

68.    These algorithmic binges focus on words or phrases used as searches or queries on the order of "I want to kill myself" and provide graphic images to portray self-harm and suicide as an inevitable consequence of a social condition that a child, like our daughter, could not recover from.

69.    We allege that the Defendants' sites normalized her condition focusing on a limited and irrational view without any counterbalance of normality.

70.    We allege that the Defendants imposed no effective age verification when signing up on the platform, and we know for sure that we did not have access to the material being viewed or any control over that material.

71.    We allege that the Defendants have created a virtual culture of reckless disregard for life and its best elements, including family and real friends.

**20**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of*
*Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

## FIRST CAUSE OF ACTION:
## WRONGFUL DEATH BY UNKNOWN "CONTENT CREATORS"

72.    We reallege ¶¶1-72 and incorporate the same by reference as if fully copied and restated herein to be part of our First Cause of Action.

73.    We tried designed our own, and our daughter's, lifestyle to be separate and apart from the commercial materialism and corruption of the modern world; we didn't normally watch TV or go to movies or malls or "chain" or convenience grocery stores.

74.    We homeschooled Abigail except for the six months we were in Costa Rica where we wanted her to be in school to learn Spanish.

75.    Abigail responded very well to her studies.

76.    She liked to study the periodic table of the elements; she played the harp; she was very musical and artistic, and yet had a profound appreciation for nature, honesty, and sincerity.  She had a horror of everything "fake."

77.    We raised her as a Christian outside of the confines of any mainstream denomination or Church.   We taught her to think for herself.

78.    We never discussed death, murder, or any of the problems of the world.

79.    I guess we thought that there would be time enough for all that when she grew up---we wanted her to preserve her childhood innocence.

21

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

80.   Within our family life, in short, we isolated Abigail to the extent that we are fairly sure she never saw a hanging on TV or in the movies.

81.   So where did she get the idea of hanging by the neck until dead?  From American or World history ?  Or from the internet?

82.   We believe the concept of suicide was alien to Abigail's home life and studies, and so it had to have come to her through the internet.

83.   She obviously learned certain concepts from her friends.  In the six months before she died, she said a lot of things that surprised us.  She told a classmate in chat she attended that she wanted to identify as "non-binary."

84.   She told me (Tonya, her mother) that I was "homophobic."

85.   She asked my mother (Jean Cole) whether she could become "emancipated" and she sang a song about emancipation---not the emancipation of the slaves, like an old-fashioned African-American "spiritual", but the modern emancipation of a child from her family.

86.   We didn't take any of this too seriously.

87.   The morning of the day she hung herself, October 18, 2021, we discovered that she had two "secret phones" on which she was accessing the internet/world wide web.

88.   We confiscated these phones and said that "had to stop"---we still believed we could protect her.

22

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

89.   She hung herself on October 18, and two weeks later, on November 3, 2021, she died at Dell Children's Hospital in Austin.

90.   We submit, as a matter of **res ipsa loquitur**, that the facts speak for themselves: the inspiration, or the confusion, or the instructions to kill herself came from "content creators" on the internet/world-wide web.

91.   We asked the Bastrop County Sheriff's Office to investigate, but they basically had no idea how or what to do.  So we felt helpless and did nothing.

92.   Since the idea of suicide could not have come from us, it had to come from the outside, and the "**but for**" causation of her death was the internet/world wide web, the Defendants and their algorithms, which we only discovered after Abigail was gone.  **Res Ipsa Loquitur.**

93.   But the content created on the internet is, very precisely created.

94.   If negligence applies, it is the negligence of the Defendants, but they intentionally have protected the culprits by refusing to hand over Abigail's information: see Exhibit C.

95.   We therefore allege that certain web "content creators" induced Abigail to kill herself, and should be liable for killing her, under the tort theories of intentional infliction of emotional distress and wrongful death, applying the essential **res ipsa loquitur** principle that the Defendants working together with John & Jane Does 1-10 and/or Corporate Cos. Who were "Content

**23**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

Creators" and these crestors had sole control over exposing our daughter to the concept, perhaps, of "emancipation by suicide."

96.   **Summary of CAUSATION: But for the ISP Defendants' immunized protection and promotion of dangerous and injurious algorithms which push John and Jane Does 1-10 [and Corporate Cos. 1-5] dangerous and injurious content on vulnerable young people, especially young girls around, at, or approaching puberty, our daughter would never have committed suicide or attempted severe self-injury leading to her death.**

97.   **The ISP defendants should not be allowed to protect these John & Jane Doe wrongdoers by refusing to disclose the identity of deceased girls who appear to have been effectively "talked into death" by algorithmic promotion of death ideation.**

98.   WHEREFORE, upon final trial-by-jury, we ask the Court to instruct the jury, enter judgment, and assess damages on these John Does 1-10 or Corporate Cos in the minimum amount of $52,000,000.00.

99.   This amount will not suffice to make us "whole" or to restore Abigail's life, but it may perhaps be sufficient to serve as punishment for the wrongdoers, or to serve as an example to others similarly situated.

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

## SECOND CAUSE OF ACTION:
## MANDATORY INJUNCTION BY BILL OF DISCOVERY

100.   We reallege ¶¶1-72 and incorporate the same by reference as if fully copied and restated herein to be part of our Second Cause of Action.

101.   We (well, actually, one of us: I Tonya Cole Dahl) wrote to Google, LLC, requesting full access to Abigail's email account (theabcat89@gmail.com) and all information derivative from and related thereto.

102.   Google, LLC, has expressly refused, as shown in Exhibit C.

103.   I have not presented my demand to any of the other Defendants, but I now ask this Court to enter a mandatory injunction for a Bill of Discovery against each of the Defendants: **Alphabet, Inc., Discord, Inc., Google, LLC**, for each of YouTube, Gboard, Duo/Meet as the named subsidiaries of **Google**, **Holla Group (for Monkey), Snap, Inc., (for SnapChat), and any of Corporate Cos. 1-5 who may be identified and served.**

104.   This Bill of Discovery should be comprehensive and, because alleged criminal conduct (wrongful death, at the very least "manslaughter"), no privacy rights of any party mentioned should restrain the identification of potential witnesses to this crime.

105.   As quoted above, the Austin (Texas 3rd District) Court of Appeals, per Justice Marilyn Aboussie, held in 1990 that:

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

25

.....a bill of discovery can be brought against a person or entity unrelated to the primary dispute but having information needed by a litigant for the sole purpose of obtaining the names of persons against whom a cause of action is maintained or contemplated.

106.   Since this case has never been overruled, and refers back to a holding of the Supreme Court of Texas in 1940[10], we submit that, as a matter of equity and fairness, and pursuant to the Open Courts Provision of the Texas Constitution, this Court must allow our suit against John & Jane Does 1-10 and Corporate Cos. 1-5 to proceed, and must order ***Alphabet, Inc.***, ***Discord***, ***Inc., Google, LLC, Snap, Inc., SnapChat, YouTube*** and each of the other Defendants to retrieve and deliver to us all records concerning the on-line activity of our late daughter ***Abigail Opal Dahl***.

107.   We submit that we have no other adequate remedy at law nor any other path, means, or avenue to obtain this information.

108. **SUMMARY OF CAUSATION: But for the immunized immunity of Defendants as internet service distributors and providers, the John Does could not and would not distribute their harmful content so easily, readily, and widely without vast expense.**

---

[10]     ***Dallas Joint Stock Land Bank of Dallas v. State ex rel. Ed Cobb et al.***, 137 S.W.2d 993 (Supreme Court of Texas, March 13, 1940).

26

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

109. **The ISP defendants should not be allowed to protect wrongdoers by refusing to disclose the identity of deceased girls who appear to have been effectively "talked into death" by algorithmic promotion of death ideation.**

110. Freedom of the Press cannot be construed to include an ISP's protection of "privacy" for anonymous "content creators" to create and say injurious things and/or promote injurious or highly risky behaviors to children/tweens/teensleading to actual harm, including self-injury and death,

111. We submit that we have already suffered irreparable injury and that the balance of the equities favors exposing the truth concerning the history behind our daughter's suicide.

112. Finally, we submit that public policy favors the grant of an injunction in this case, for all the reasons stated in the text of and academic and medical research footnotes to our paragraphs 38-72 *"The Internet Culture of Death."*

113. WHEREFORE, we move for a mandatory injunction against all defendants requiring comprehensive investigation, restoration, discovery, and delivery of all of our daughter's internet activity on their respective platforms.

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

## THIRD CAUSE OF ACTION FOR DECLARATORY JUDGMENT: TEXAS OPEN COURTS REQUIRE COURTS TO ALLOW A COMPLAINT FOR EQUITABLE BILL OF DISCOVERY

114.  We reallege ¶¶1-72 and incorporate the same by reference as if fully copied and restated herein to be part of our Third Cause of Action.

115.  Article 1, §13 of the Texas Constitution states:

**All courts shall be open,
and every person for an injury done him,
in his lands, goods, person, or reputation,
shall have remedy by due course of law.**

116.  Despite the 1990 opinion in the Austin Court of Appeals by Justice Aboussie, there is a 2007 opinion for the Texas Court of Appeals for Texarkana to the contrary, holding that "following enactment of rule governing discovery, trial court does not retain authority to issue a discovery order by virtue of the common law equitable bill of discovery." ***In re Does 1-10***, 242 S.W.3d 805 (Tex.App.—Texarkana December 12, 2007).

117.  Because we are seeking to sue and then identify 10 John Does as well, we believe that this case is wrongly decided and must be overruled or disregarded in favor of Justice Aboussie's ruling in Austin in 1990.

118.  We submit that the Texas Constitution's guarantee of Open Courts requires recognition of the Common Law Complaint for Equitable Bill of

**28**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of
Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

Discovery along the lines traditionally upheld in Texas and other states, most notably Florida, where the Complaint for Pure Discovery is alive and well[11].

119. Wherefore and accordingly, we move and request that this Court uphold the Texas tradition of a Complaint for Equitable Bill of Discovery as a right under the Open Courts provision of the Texas Constitution.

## FOURTH CAUSE OF ACTION:
### TO EXTEND, MODIFY or REVERSE ISP IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT 47 U.S.C. §230(c)

120. We reallege ¶¶1-72 and incorporate the same by reference as if fully copied and restated herein to be part of our Fourth Cause of Action.

121. Courts have applied and construed the Communications Decency Act to provide an oppressive and dangerous form of absolute immunity for internet service providers who merely "edit" or "censor" but do not "write" or "publish" or "speak" content created by others.

122. The distinction between "editing" (and/or "censoring") and "publishing" in the context of internet distribution or "content creation" is unrealistic in the extreme. Editing is often the process which transforms

---

[11] ***The Complaint for a Pure bill of discovery: a Living, Breathing, Modern Day Dinosaur?*** Daniel Morman: Florida Bar Journal, March 2004---78-MAR Fla. B.J. 50

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

literary garbage into best-sellers. Censorship is often the process which makes the mediocre sell better than the true masterpiece.

123. But regardless, the distinction is highly subjective and this Court should declare it VOID FOR VAGUENESS.

124. The vagueness of the Communications Decency Act as applied and construed in the courts creates and maintains multiple opportunities for arbitrary and capricious judicial preferences in favor of large corporations such as the individual victims of corporate practices and policies, including the use of algorithms which act as "forced publishers" encouraging consumption of deleterious material to the profit of ISPs and the detriment, injury, and sometimes death of *people like us, the Plaintiffs in this case.*

125. WHEREFORE, WE MOVE AND REQUEST THAT UPON FINAL TRIAL, THIS COURT WILL EXTEND, MODIFY, OR REVERSE the existing law of immunity arising from the Communications Decency Act, either by clarifying and drawing truly bright and clear lines between "content creators" and "publishers" on the one hand and mere "distributors" on the other (abolishing the editorial or censorial power in such "distributors"), or simply abolishing any immunity for the distribution of harmful material:

126. We submit that it would be consistent with the Constitution of the State of Texas, and of the United States, "Let there be full Freedom of Speech, of

**30**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

Expression, and of the Press [including the internet], but let everyone bear full responsibility and accept all liability for the harms arising from the abuses of these freedoms."

## **PRAYER FOR RELIEF**

127.   We pray that the Defendants be cited and summoned to appear and answer herein, and that, upon final trial and judgment:

128.   The Court shall declare and adjudge that we have the right to file this Complaint for Equitable Bill of Discovery aimed at identification of John and Jane Does and Corporate Cos;

129.   That our right to file this Complaint for Equitable Bill of Discovery is guaranteed by Article 1, §13, known as the Open Courts Provision of the Constitution of the State of Texas;

130.   Whereupon, we further pray that this Court shall enter a mandatory injunction to all defendants to recover and produce to us all electronic records of our daughter's activities on their web platforms;

131.   And armed with full right and the fruits of this Bill of Discovery, upon final trial-by-jury, we shall have legal judgment for not less than $52,000,000.00 in actual, consequential, direct, exemplary and punitive damages for the death of our daughter, of whose estate and heritage we are the administrators and executors;

**31**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

132.   And that the Court will award us all our costs of court and the expenses and fees necessary for the filing, preparation, and pre-trial discovery and motion practice in this case, as well as all costs of trial;

133.   We pray for pre-judgment interest at the highest lawful rate and to the maximum extent allowed by law from the date of the death of our daughter, November 3, 2021, until entry of judgment;

134.   We pray for interest on the judgment at the highest legal rate from the date of judgment until collected and

135.   We pray for all such other and further relief, at law or in equity, to which we may show ourselves to be justly entitled.

Respectfully submitted,

By: _____

**Tonya Cole Dahl**
373 FM 2571
Smithville, Texas 78957
Telephone: 512-575-5982
Email: tonya@mailfence.com

and

By: _____

**Cody Dahl**
373 FM 2571
Smithville, Texas 78957
Telephone: 512-5755981
Email: cody.dahl@mailfence.com

32

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

# Exhibit A:
## Our Favorite Photo of
## Our Late Daughter
# ABIGAL OPAL DAHL
## November 19, 2008-
## November 3, 2021
## R.I.P.

**33**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of*
*Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*



# Exhibit B:
# Bastrop County Sheriff's Office Report on "Attempted Suicide" of ABIGAIL OPAL DAHL

**34**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

# BASTROP COUNTY SHERIFF'S OFFICE

## Offense / Incident Report

### GENERAL OFFENSE INFORMATION    **Report Type:** Cumulative Report

| | | | |
|---|---|---|---|
| **Agency** | BASTROP COUNTY SHERIFFS OFFICE | **Location** | 373 FM 2571 |
| **Case #** | 2021-04723 | | SMITHVILLE TEXAS 78957 |
| **File #** | | | |
| **Description** | ATTEMPTED SUICIDE | | |
| **Incident Status** | CLOSED | | |
| | | **From Date/Time** | 10/18/2021 00:00 |
| | | **To Date/Time** | |
| | | **Report Date** | 10/18/2021 12:59 |
| **Reporting Officer** | MAZE, | **Initial Rep. Date** | 10/18/2021 12:59 |

### SUBJECT(S)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | CLEMONS, TREY LAMAR | | | | | | |
| **Address** | 107 BUNTE STREET  SMITHVILLE, TX 78957 | | | | | **Phone** | 512-718-0506 |
| **Race** | B | **Ethnic** | N | **Sex** | M | **DOB** | **/**/** (***) |
| **Height** | 5'07" | **Weight** | 265 | **Hair** | BLK | **Eyes** | BRO |
| **S.S.N.** | ___-__-____ | **DL & St.** | ******** | **JRN#** | | | |
| **Sub. Type** | OTHER | **Arrest ID** | | **Citation #** | | | |
| **Notes** | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | ESPINOZA, PAUL | | | | | | |
| **Address** | 307 FAWCETT STREET  SMITHVILLE, TX 78957 | | | | | **Phone** | 512-718-5805 |
| **Race** | W | **Ethnic** | H | **Sex** | M | **DOB** | **/**/** (***) |
| **Height** | 6'00" | **Weight** | 250 | **Hair** | BRO | **Eyes** | BRO |
| **S.S.N.** | ___-__-____ | **DL & St.** | ******** | **JRN#** | | | |
| **Sub. Type** | OTHER | **Arrest ID** | | **Citation #** | | | |
| **Notes** | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | DAHL, ABIGAIL OPAL | | | | | | |
| **Address** | | | | | | **Phone** | ___-___-____ |
| **Race** | W | **Ethnic** | N | **Sex** | F | **DOB** | **/**/** (***) |
| **Height** | | **Weight** | | **Hair** | RED | **Eyes** | |
| **S.S.N.** | ___-__-____ | **DL & St.** | | **JRN#** | | | |
| **Sub. Type** | OTHER | **Arrest ID** | | **Citation #** | | | |
| **Notes** | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Name** | Cole, Melba | | | | | | |
| **Address** | 373 FM 2571  SMITHVILLE, TX 78957 | | | | | **Phone** | ___-___-____ |
| **Race** | W | **Ethnic** | | **Sex** | F | **DOB** | **/**/** (***) |
| **Height** | | **Weight** | | **Hair** | | **Eyes** | |
| **S.S.N.** | ___-__-____ | **DL & St.** | | **JRN#** | | | |
| **Sub. Type** | OTHER | **Arrest ID** | | **Citation #** | | | |
| **Notes** | | | | | | | |

Case No:   2021-04723

| Name | Dahl, Cody | | | | | | |
|------|-----------|---|---|---|---|---|---|
| Address | 373 FM 2571  SMITHVILLE, TX 78957 | | | | | Phone | 512-575-5981 |
| Race | W | Ethnic | N | Sex | M | DOB | **/**/** (***) |
| Height | | Weight | | Hair | BRO | Eyes | |
| S.S.N. | ___-__-____ | DL & St. | | JRN# | | | |
| Sub. Type | WITNESS | Arrest ID | | Citation # | | | |
| Notes | | | | | | | |

## RELATIONSHIP(S)

| Person A | ABIGAIL OPAL DAHL | Relationship | UNKNOWN | Person B | PAUL ESPINOZA |
|----------|-------------------|--------------|---------|----------|---------------|
| Person A | ABIGAIL OPAL DAHL | Relationship | UNKNOWN | Person B | TREY LAMAR CLEMONS |

## PROPERTY

| Property Category | OTHER | | Loss Type | EVIDENCE |
|-------------------|-------|---|-----------|----------|
| Description | Dog Leash Rope | | | |
| Notes | CID Locker 10 | | | |
| Make | | Model | Style | |
| Serial No / VIN | | | Color | |
| Vehicle Year | | Plate No/ State/ Type | | |
| Loss Date | | Loss Quantity | Loss Value | |
| Rec Date | | Rec Quantity | Rec Value | |
| Drug Type | | Drug Quantity | Drug UOM | |

## INVESTIGATOR

| Name | 1525 SANCHEZ, | Assigned Date | 10/19/2021 | Supplement No | 0 |
|------|---------------|---------------|------------|---------------|---|

**Entered By**   MAZE,

**Officer**   MAZE,

**Supervisor**

Case No:  2021-04723

# Incident # 2021-04723 (Synopsis)

INTRODUCTION

On 10-018-2021 at approximately 1259hrs, I, Deputy Maze # 1614, was dispatched to 373 FM 2571 Smithville, TX 78957 for an assist EMS call.

# Incident # 2021-04723

MAZE,

## INTRODUCTION

On 10-018-2021 at approximately 1259hrs, I, Deputy Maze # 1614, was dispatched to 373 FM 2571 Smithville, TX 78957 for an assist EMS call.

## SCENE SUMMARY

I arrived and observed a white female laying on her back on the ground with Arcadian EMS and Smithville Fire Department personnel conducting CPR on her.

## INTERVIEWS

I walked up to the scene and observed a juvenile female connected to EKG machine and medical personnel conducting chest compressions. I observed a large wooden tree house and observed a male laying on his stomach with his feet hanging off the edge screaming and crying out loud. I was advised by Trey Lamar Clemons (B/M DOB 07-31-1982) (Chief SFD) the male in the tree house is the father. The grandmother was on her knees praying and talking to the juvenile asking her to come back. I asked the grandmother to step back so medics could help her.

I was provided the identity of the juvenile by the grandmother to be Abigail Opal Dahl (W/F DOB 11-19-2008). The mother came running down the hill from the house and the father came out of the tree house and they went to their daughter's side. I observed they were getting in the way of the medics and advised them to move to Abigail's feet. The mother and father held onto Abigail's feet and began praying. I stood by the parents and would advise them to let go of Abigail's feet when the medics would announce clear before the shock.

The grandmother advised the mother and Abigail had gotten into an argument over her cell phone earlier. The grandmother advised Abigail's mother had found some things on a social media site she did not agree with and took her phone. The grandmother advised Abigail said she was going down to the tree house and do some school work. Grandmother advised an hour or so had gone by when Abigail's went to check on her she found her hanging in the tree house.

Trey advised when he arrived the Arcadian and Abigail's father were up in the tree house and had just taken her down from the leash she had used to hang herself. Trey advised he and his Lieutenant Paul Espinoza (H/M DOB 10-23-1974) went to the tree house and stood on the ground while the Arcadian Medic and father lowered Abigail off the side to them. Trey advised he and Paul placed Abigail onto the ground and restarted CPR.

I observed fire and ems work on Abigail trying to regain a pulse. I observed the medics load Abigail onto the gurney place her into the ambulance and leave the scene. I was advised Abigail was being transported to Ascension Seton located in Smithville, TX.

I observed CID arrive on scene released scene and provided all the information I had obtained.

I was released from the scene per CID and completed an information report.

I photographed the scene and uploaded the pictures into RMS.

The entire incident was recorded on body worn camera and dash camera.

END OF REPORT.

DEPUTY'S ACTIONS

Took Photographs of the Scene

Attached Photographs in RMS

STATUS

Released to CID

# Incident # 2021-04723 (1)

### 1814 MOEHNKE,

On Monday the 18th day of October 2021 I, Investigator JC Moehnke, went to 373 FM 2571 regarding a suicide attempt by hanging.

The property known as 373 FM 2571 is located in the rural area outside of Smithville. Trees are spread throughout the property. Within the property lies a tree house made of cedar. The structure is open and amongst the trees.

Members of the Bastrop County Sheriff's Office, Acadian EMS, Smithville Volunteer Fire Department, and family were present when I arrived.

Upon arrival I observed several people gathered at the corner of the tree house. EMS personnel and possibly volunteer fireman were performing life saving procedures on a young female (Abigail Dahl) who was apparently the person who attempted suicide.

The person was unconscious, on the ground supine, eyes closed, with emergency equipment attached including collar. I did not observe any injuries to the exposed areas of the body including the arms and legs. Refer to photographs.

A belt and drawing were on the ground under or immediately adjacent to the tree house. The belt was not a known to be a part of the event and first responders did not remove the belt from Abigail Dahl. Refer to photographs.

Investigator Eliseo Sanchez informed meDahl was found hanging from a leash attached to a tree above the tree house floor.

When I looked to the tree house I observed the leash attached to a tree branch. The house was an open structure consisting of stairs, a floor and supporting posts; no rails and no roof. Refer to photographs.

The leash was looped with stitching at one end with a clasp attached to the opposite end. The leash was made of a black color durable material. Refer to photographs.

The leash had been laid over the tree branch and tied by threading the clasp end through the loop thereby creating a secure hold to the branch. Refer to photographs.

Blond strands of hair was present in the clasp. Refer to photographs.

A few items were present on the tree house floor seemingly in no particular placement. The items are as follows from bottom left corner (stair side) to top right corner:

- Watermelon flavor 'Glee' Chewing Gum
- Peppermint flavor 'Real Good' Chewing Gum
- 2 common writing pencils
- 1 writing ink pen
- Neonatal Adult Pulse Oximeter Adhesive Sensor
- Radio Translucent Electrode
- 'Physio Control' test load cable test box
- 'Larson Elementary Algebra Within Reach' hard cover text book (I flipped through the pages of the

book to find nothing

extraordinary)
- blue cover spiral paper notebook (I looked at the pages to find drawings and math question answers

written on the paper)

Case No:  2021-04723

Refer to photographs.

Color drawings were present on the floor.  The drawings appeared to be random miscellaneous characters.  Refer to photographs.

The leash was removed from the branch by cutting the branch from the tree.  The leash was of such that a 6' man had to climb the tree to get to it.

Based on observations at the scene a working theory was:
1.  Abigail Dahl climb the stairs to the tree house floor
2.  The leash was either carried along or already present
3.  Abigail Dahl climb the tree likely utilizing the same branch as the person used to remove the leash
4.  Abigail Dahl, standing on and balancing herself on said lower branch, placed the leash around the branch
5.  The clasp end was moved through the loop securing the leash to the tree
6.  The opposite end of the loop was placed around the neck and clasp buckled to the lead, thereby creating another secure loop that could cinch around the neck
7.  Abigail Dahl allowed herself to fall thereby causing the loop around the neck to cinch

Again, this is only a working theory of how the hanging could have taken place based on the knowledge and observations at the time.

Abigail Dahl was transported to Acension Seton Smithville Hospital 1201 Hill Road.

I spoke with Abigail Dahl's grandmother.  According to the grandmother, Abigail and family have been visiting rom Canada since Friday 10/15/2021.  They are staying at 373 FM 2571.  The grandmother described a recent change in attitude characterized as "rebellious".  She is home schooled and socialized through different programs.  She has been taking cellular phones without permission; Abigail Dahl does not have a phone of her own.  Grandmother was aware of a group chat social media realm called 'Converse'.  The 'Converse' people were not well liked.

Abigail has a close friend in Lockhart; name not known.

The family is strong in their faith and God and were seen actively praying throughout the event.

Abigail Dahl's heartbeat resumed at Smithville hospital.  She was transported to Dell Children's Hospital 4900 Mueller Boulevard in Austin.

Photographs attached to RMS.

End of Report - jm 1579

Case No:  2021-04723

# Incident # 2021-04723 (2)

1525 SANCHEZ,

On 18 October 2021 I Investigator E. Sanchez #1295 responded to 373 FM 2571 Smithville TX in reference to an attempted suicide. Upon arrival I was brief by Sgt Reyes who advised the victim was a 13 year old female identified as Abigail Dahl.

I observed numerous people on scene, medics were tending to Abigail, her parents were at her feet praying and her grandmother was at a tree looking over the family.

I pulled the grandmother to the side and spoke with her briefly. She was identified as Melba Jean Cole 09 May 1946. She advised Abigail and her mother got into an argument over social media posts she made at which time her mother took her phone away. Melba said Abigail went outside to the tree house/swing and was outside for approximately an hour. Within that hour her father Cody Dahl went outside to check on Abigail at which point she was observed by Cody handing in the tree by a dog leash. With the help of volunteer firefighters Abigail was brought down from approximately 10 feet in the air and placed on the ground where she was provided medical care. After approximately 35 minutes of life saving measures she was transported to Seton Hospital Smithville. I changed locations to the hospital and was advised by medical staff that a heart rate had been restored and they will be air flighting her to Dell Children's Hospital. At this time I wished the family well and returned to service.

As of 10/18/2021 Abigial was still in the ICU in critical condition.

On 11/03/21 I received a phone call from Investigator Karla at the Travis County Medical Examiners Office. I was advised Abigail was pronounced deceased at 1108hrs on this date by Dr. Marita Thompson at Dell Children's Hospital. Investigator Karla advised Abigail did not show signs of progress and never regained consciousness.

EOS

E. Sanchez #1295

# Incident # 2021-04723 (3)

1610 SGT REYES,

On 10-18-21, at about 1302hrs I Sgt. R. Reyes # 612 assigned me a call along with Deputy D. Maze in reference to a 13 year old that hung himself at 373 FM 2571 in Smithville.

Given the information Communications was given on this call, I contacted CID Sgt. C. Brimhall and advised him of the information we had and were receiving. He advised he would have some Investigators start heading to this call as well. Prior to arrival, I heard Deputy Maze advised the 13 year old was now on the ground and EMS was doing CPR.

Upon arrival, I observed EMS and first responders on scene attending to a young female (Abigail Dahl) on the ground. CPS was being performed on her. There was a female and male (her parents) at the end of the female's feet praying. While Ems continued to work on Abigail I briefly spoke to Deputy Maze. He stated what he had gathered so far from Abigail's grandmother was that Abigail and her mother had an argument this morning over a cell phone. Abigail 's phone was removed by her mother.

Abigail then walked down to the "tree house" (which is basically a floor and the ladder in the air attached to a tree) to do some work or homework. Apparently, after about an hour her mother walked to the tree house to check on Abigail and found her hanging from a tree with a black dog leash around her neck. Deputy Maze advised there was a lime / green colored suicide note that was left behind by Abigail. I did see a black dog leash still attached to one of the tree branches up by the tree house.

A short time later Bastrop County CID Sgt. A Gonzalez, Inv. E. Sanchez, Inv. J. Moehnke and Inv. C. Jonse made scene. EMS transported Abigail to Smithville Hospital. I then cleared the scene.

Later on Investigator Moehnke advised me that Abigail was alive and transported to Dell Children's Hospital in Austin Texas.

R. Reyes # 612

# Incident # 2021-04723 (4)

JONSE,

On Monday the 18th day of October 2021 I, Investigator Cameron Jonse, responded to 373 FM 2571 in Smithville, Texas regarding a suicide attempt by hanging.

Upon arrival, I observed several people gathered at the corner of the tree house. Acadian EMS Unit #923 and Smithville Volunteer Fire Department were performing lifesaving procedures on a young female who was identified as Abigail Dahl.

I observed that Abigail Dahl parents were near their daughter praying. Investigator Sanchez pulled Abigail Dahl grandmother to the side and spoke with her. I was standing near Investigator Sanchez during the conversation. Abigail Dahl grandmother stated that Abigail Dahl got into an argument over social media that resulted in her mother taking any her phone. Grandmother stated that Abigail Dahl went outside to the tree house and was there for approximately one hour. Grandmother stated that Abigail Dahl father went outside to check on her when he observed her hanging in the tree by a dog leash. Smithville Volunteer Firefighters assisted getting Abigail Dahl down from the tree and to the ground to preform life saving measures.

Acadian EMS Unit #923 transported Abigail Dahl to Seton Hospital in Smithville.

I traveled to Seton Hospital in Smithville. I was informed by Investigator Sanchez that the Hospital Staff was able to get a heart rate back and that they would be transported by air to Austin, Texas.

No further information gathered on scene.

I departed the hospital and returned to service.

End of supplement.

Investigator Cameron Jonse #1455

# Exhibit C:
## Google's "Postmortemrequests" Refusal re:
## Theabcat89@gmail.com
## Belonging to our daughter
# Abigail Opal Dahl

**35**

*Cody Dahl and Tonya Cole Dahl, individually and as Executors of the Estate of Abigail Opal Dahl, a deceased minor, v. Alphabet, Discord, Google LLC, et al.*

**Subject:** [7-7828000032969] Your request for accessing a deceased user's account
(Internal Ref. No. 26350489)
**From:** postmortemrequests@google.com
**Date:** 11/7/22, 3:46 PM
**To:** tonya@mailfence.com

Dear Tonya Dahl,

We are sorry for your loss and we thank you for your patience. We have reviewed your
request to obtain the contents of account, **theabcat89@gmail.com**. Having reviewed
the settings, attributes, and other relevant information pertaining to the account we
are unable to provide the requested content.

Our determination regarding whether we are able to provide the requested content is
based on a variety of factors, including legal restrictions. To protect the privacy of
people who use Google services, we are unable to share further details about the
account or discuss our determination in greater detail.

Thank you in advance for your understanding.

The Google Team